## BRYCE PLUMBING & HEATING CO. v. MARYLAND CASUALTY CO.

### No. 3067.

District Court, E. D. South Carolina.

Jan. 7, 1938.

Willcox, Hardee & Wallace, of Florence, S. C., for plaintiff.

Herbert & Dial and J. B. S. Lyles, all of Columbia, S. C., for defendant.

MYERS, District Judge.

On the 30th day of July, 1932, the plaintiff, Bryce Plumbing & Heating Company, a South Carolina corporation with headquarters at Florence, South Carolina, hereinafter referred to as "Bryce," entered into a contract with the United States of America for the installation of designated portions of the plumbing and electrical equipment in a hospital building to be constructed in Batavia in the State of New York. The Heard Act, 40 U.S.C.A. § 270, being then in force, Bryce executed the standard form of agreement and furnished the standard form of performance bond required by the act, with Standard Accident Insurance Company, a corporation under the laws of the State of Michigan, hereinafter referred to as "Standard," as surety. On the 2d day of September, 1932, Bryce entered into an agreement with William R. McLoughlin, Inc., a Massachusetts corporation, hereinafter referred to as "McLoughlin," as subcontractor for the installation of the electrical equipment required by its contract with the Veterans' Bureau, at and for a contract price of $39,-400; the supplies to be furnished and all the work to be performed in strict compliance with the contract between Bryce and the Veterans' Administration Bureau, to which contract reference is made, and the same made to apply to the sub-contract as a part and parcel thereof to the same extent as if actually incorporated and copied therein. The Bryce-McLoughlin contract sets out the following stipulations and terms:

"The contractor agrees to pay the subcontractor for the performance of its work the sum of thirty-nine thousand four hundred dollars ($39,400.00) in current funds, subject to additions and deductions for changes as may be agreed upon, and if there is any dispute in connection with the changes, between the Bryce-Plumbing & Heating Company and the sub-contractor as to the amount charged, same is to be passed upon by the Government Superintendent, which amount will be binding on either party. Payments: 90% of the work in place as approved by the contractor and Government Inspector each 30 days after the beginning of work or the amount that is allowed by the Government less a retainage of 10% and the retainage as held by the Government of 10%, held by the contractor to be paid on completion and acceptance by the Government. These payments are to be made immediately upon receipt in our office of our check from the Government, which is usually between the 7th and 13th of the month, but before these payments are made the sub-contractor is to furnish the contractor with a complete list of the manufacturers and companies that they owe with a letter from each of his creditors releasing the

contractor from any responsibility for any claim that would be filed against us, also a detailed release from all employees or anyone doing work for them on this contract; accompanying these releases the sub-contractor is to furnish a sworn statement that the list furnished is a complete list of all creditors, either for labor or material."

"The sub-contractor agrees to furnish the Bryce Plumbing & Heating Company with a surety bond to be approved by it in the sum of $30,000.00, provided that the contractor requests this bond * * * but the premium on this bond, if requested, is to be paid by the Bryce Plumbing & Heating Company, and the contractor can request that this bond be furnished at any period during the construction of this contract.

"The sub-contractor agrees that if a bond is required, it shall conform in all respects to the same type of bond, except in amount, that the Bryce Plumbing & Heating Company has furnished the U. S. Veterans Bureau, so as. to protect the Bryce Plumbing & Heating Company, not only against any claims and demands made on it by the U. S. Veterans Bureau, but also to protect the Bryce Plumbing & Heating Company from any claims, demands or suits which may be brought against it on .account of any unpaid bills for labor or material or any other claim which might arise in connection with the work. If the above mentioned bond is not required, the sub-contractor is to furnish the Bryce Plumbing & Heating Company with a release from each of his creditors before the final payment is made."

McLoughlin having thereafter entered upon the performance of its duties under the contract and finding itself unable to present to Bryce the receipts and other evidences of payment for labor and materialmen required in the agreement as a prerequisite to payment for part performance, Bryce requested the bond for $30,000 provided for in the stipulations to be given upon such request. McLoughlin furnished bond in the sum of $30,000 with defendant Maryland Casualty Company, a Virginia corporation. hereinafter referred to as "Maryland," as surety, conditioned as follows: "The condition of this obligation is such that if the principal shall well and truly perform all of the conditions, terms and stipulations of the contract above referred to" (contract between McLoughlin and Bryce, date September 22nd, 1932) "said contract being attached hereto and made a part hereof as completely and fully as if written herein, and a

further condition of this obligation is such that if the principal shall protect and save harmless Bryce Plumbing & Heating Company from any and all costs, court costs and attorneys' fees in any suit or actions at law which may be brought against Bryce Plumbing & Heating Company on any account or for any cause whatsoever arising out of the principal's contract, then this obligation to be null and void, otherwise to be and remain in full force and effect."

 Upon the acceptance and approval of the bond by Bryce, the payments then due McLoughlin by Bryce were made, without evidence of payments for material and labor, waiver of such requirement by the giving of the bond being the construction of the Bryce-McLoughlin contract by the parties thereto, as appears from the testimony. During the month of December, 1932, Bryce was advised of failure by McLoughlin to comply with the terms of the contract as to payment for material and labor; of which fact Maryland was informed, and on December 29, 1932, Bryce notified Maryland that McLoughlin had discontinued work under the contract, and called upon Maryland to complete the same. Maryland advised that it was investigating· the matter, and on January 6, 1933, Bryce specifically notified Maryland that the understanding of both Bryce and McLoughlin was that the giving of the bond had dispensed with the requirement for receipted bills and releases from material men and labor. Wth the matter still under investigation, Maryland, on January 23, 1933, authorized Bryce to make up McLoughlin's pay roll; and, about that time, McLoughlin completely abandoned the contract. Maryland then denied liability and refused to assume any responsibility; and Bryce was forced, for its own protection, to undertake to complete McLoughlin's contract, paying for all material and labor. Efforts to secure an adjustment and settlement of the controversy were made, but. Maryland refused to recognize any liability whatever under its bond, and this action was then brought. Bryce being then in financial difficulties, assigned to Standard, its surety upon this and other contracts, on the ———— day of October, 1933, its claim against Maryland on account of the McLoughlin contract and bond. The original action on the present suit was begun in the court of common pleas for Florence county, and removed by Maryland to this court. Motion to dismiss, on the ground that under the Heard Act the action should be brought in

the district where the work under the contract was to be performed, was overruled; as was also a subsequent motion, after the assignment by Bryce to Standard of its claim under the McLoughlin contract and bond, to dismiss on the ground that plaintiff had no further interest and had forfeited its right to continue the action—Bryce contending that the assignment, while absolute on its face, was merely intended as collateral on such obligations as might be due by Bryce to Standard. The answer of Maryland further alleged that plaintiff had no legal capacity to sue, because its charter had been surrendered in the year 1933 upon failure to pay capital stock tax. The position so taken is disposed of by the South Carolina statute, Code 1932, § 7704, which specifically provides that, upon cancellation of charter for nonpayment of tax, a corporation shall continue for the liquidation of its affairs or for the collection of claims; and further provision of section 408, Code of 1932, providing that action shall be continued in the name of the original party upon a transfer of interest. The answer further alleges that Maryland was released from such obligations as it had assumed under the bond by the failure of the plaintiff, Bryce, without the knowledge or consent of defendant, to adhere to the provisions of the contract with reference to the method to be followed in the making of payments to McLoughlin and its right to such payments.

This, therefore, is an action at law for the recovery of damages, heard without a jury, and the right to recover depends, first, upon construction of the contract and bond guaranteeing the performance thereof, and upon the testimony in support of the items claimed as recoverable on the asserted liability of Maryland as surety.

Testimony taken before a referee, under order of reference, is before the court and has been carefully considered. It appears that having entered upon its duties under the contract, McLoughlin was unable to furnish evidence of payment to and releases from material men and labor, and that thereupon the bond provided for in the contract was requested and was furnished by the defendant Maryland. Maryland guaranteed the contract for a cash consideration, and should have advised itself, not only of the terms and conditions of the contract, but of the construction thereof by the parties thereto. This court is of the opinion that the provision for bond upon request was an alternative provision, and

that payment other than in the manner provided for, subsequent to the execution, acceptance, and approval of the bond, was not such a departure from its terms and conditions as to release the surety.

It does not appear whether, at the time the bond was given, Maryland was advised that no payments had been made under the contract. It does appear, however, that payment of the final instalment on the bond premium was accepted by Maryland subsequent to knowledge given them of the then existing difficulties and demand for performance of the conditions of the bond. It further appears that, during its consideration of the demand, and before final repudiation of any obligation whatever under the bond, certain payments were made by Bryce for the McLoughlin account, with the consent and approval of Maryland. By its conduct in these respects, Maryland was thereafter estopped from denying liability on the bond.

This court further is of the opinion that the paragraph in the contract providing for bond upon request, if and when resorted to, dispensed with the requirement from subcontractor of proof of payment to and releases from material men and labor, as construed and relied upon by both McLoughlin and Bryce.

The failure to produce before the referee the books and records of Bryce was satisfactorily accounted for, the same having been lost; and an effort was made to prove the recoverable items by testimony of a certified public accountant, as the result of an audit made by him theretofore of the Bryce books and papers. This testimony I hold to be competent, in so far as it shows by secondary evidence the existence, at the time of the audit or examination of the books and accounts of Bryce, of authentic entries and manuscript records supporting the items claimed, many of which are in evidence. Certain items are further supported by testimony of witnesses, officers, and employees of Bryce concerned with the disbursements made and so evidenced, in addition to original invoices, payrolls and vouchers produced.

I find from the testimony that the cost to Bryce for completion of the contract, over and above the contract price stipulated in the McLoughlin contract, after making allowances, credit items and corrections, is amply supported in the sum of $7,413.56. Memorandum of items allowed is herewith filed.

I find that Bryce was further damaged in the sum of $9,935, by failure of McLoughlin to pay for materials furnished to McLoughlin in connection with the performance of its contract, and for which Standard, as surety for Bryce, was required to pay on judgments rendered against Bryce and Standard in the State of New York.

Standard further paid for legal services and expenses in defense of actions brought against Bryce and Standard in the State of New York, the sum of $1,291.47, claimed as recoverable. This item is disallowed. The court finds that these were legitimate and proper claims against McLoughlin, and therefore against Bryce, under its contract with the Veterans Bureau; and that legal proceedings were unnecessary to fix responsibility for their payment upon McLoughlin and its surety. While the record shows that Maryland was notified of these demands and refused to pay them, and refused when requested to defend the actions, it is my view that this is not a proper item of loss to Bryce, recoverable under the bond and contract.

It is therefore ordered, adjudged, and decreed that the plaintiff, Bryce Plumbing & Heating Company, have judgment against the defendant, Maryland Casualty Company, in the sum of $17,349.30, with interest on the sum of $7,413.56 from the 8th day of September, 1933, to July 1, 1934, at the rate of 7 per cent. per annum, the legal rate for that period, with interest at the rate of 6 per cent. per annum from the 1st day of July, 1934, on the said sum of $7,413.56, and with interest at the rate of 6 per cent. per annum on the sum of $9,935.74 from the 1st day of July, 1935.